UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZACHARY BARIAN, | No. 2:14-cv-1102 CKD P |
| Plaintiff, | |
| v. | ORDER AND |
| UNITED STATES OF AMERICA, | FINDINGS AND RECOMMENDATIONS |
| Defendant. | |

Plaintiff is a federal prisoner proceeding pro se and in forma pauperis under the Federal Tort Claims Act (FTCA), 28 U.S.C.A. § 1346.  Plaintiff alleges that he suffered personal injury as a result of negligence when he was incarcerated at Federal Correctional Institution-Herlong. Before the court is defendant's motion to dismiss the negligence claim due to a lack of subject matter jurisdiction.  (ECF No. 12.)  The motion has been fully briefed, including a sur-reply accepted in light of plaintiff's pro se status.  (ECF Nos. 15, 19 & 23.)

For the reasons set forth below, the court will recommend that defendant's motion be granted.

I. Background

In the complaint, plaintiff alleges that on November 26, 2012, while in the prison yard at FCI-Herlong, he was exposed to gas fumes that burned his eyes, nose, and lungs; made him lightheaded; and caused him and other inmates on the yard to cough and choke. (ECF No. 1 at 1-2.) A correctional officer later informed plaintiff that another officer had conducted a "training

1

operation" involving chemical agents in the parking lot adjacent to the prison yard, separated by a chain-link fence. This officer "forgot to check his wind flaps," which resulted in the prison yard being "gassed" with chemical agents. (Id. at 4.) Plaintiff asserts that prison officials failed to discharge "their duties placed upon them by way of special relationship under Federal and California State Law to provide for the 'care and safety' of [plaintiff and other inmates] by negligently allowing [plaintiff] to be battered by said chemical agents[.]" (Id. at 17.)

Plaintiff filed the complaint in the instant action on May 5, 2014. (ECF No. 1.)

In its July 1, 2014 screening order, the undersigned concluded that plaintiff stated a claim for negligence under the FTCA, but did not state cognizable claims for battery or retaliation. (ECF No. 6.)

II. Legal Standards

A. Federal Tort Claims Act

The FTCA provides for recovery of money damages against the United States for cognizable state or common law torts committed by federal officials while acting within the scope of their employment. 28 U.S.C. §§ 1346(b), 2674. The FTCA provides that the United States shall be liable in tort suits "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. It is the exclusive waiver of sovereign immunity for suits against the United States sounding in tort. 28 U.S.C. § 1346(b).

The FTCA can extend tort liability to the U.S. government if the facts show that the actions taken amount to negligence under state law. Under California law, negligence is established if the plaintiff can show that his injury is a result of the defendant's breach of a duty of care. Nally v. Grace Cmty. Church, 47 Cal. 3d 278, 294 (1988).

However, the FTCA waiver of immunity is inapplicable to a claim based on the exercise of a discretionary function on the part of a federal agency or employee. Childers v. United States, 40 F.3d 973, 974 (9th Cir. 1995) (citing 28 U.S.C. § 2680(a)). This is true "whether or not the discretion is abused." Miller v. United States, 163 F.3d 591, 593 (9th Cir. 1998). In creating the discretionary function exception (DFE), Congress "wished to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy

1   through the medium of an action in tort." U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense,
2   467 U.S. 797, 814 (1984).

3       Because Congress expressly reserved the sovereign immunity of the United States as to
4   such claims, federal courts lack jurisdiction over any claim to which the DFE applies. Alfrey v.
5   United States, 276 F.3d 557, 561 (9th Cir. 2002). Although the plaintiff bears the initial burden
6   of proving subject matter jurisdiction under the FTCA, the government bears the burden of
7   establishing that the DFE applies. Sabow v. United States, 93 F.3d 1445, 1451 (9th Cir. 1996);
8   Miller, 163 F.3d at 594.

9   B. Rule 12(b)(1) Motion

10      A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the subject
11  matter jurisdiction of the court. Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039-40
12  (9th Cir. 2003). A Rule 12(b)(1) motion will be granted if the complaint, when considered in its
13  entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction. Id. at
14  1039, n.2; Thornhill Publ'g Co. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir.
15  1979). On a motion for lack of jurisdiction under Rule 12(b)(1), no presumptive truthfulness
16  attaches to the plaintiff's allegations, as it does on a motion to dismiss under Rule 12(b)(6) or a
17  motion for summary judgment under Rule 56. Id.

18      Challenges to jurisdiction under Rule 12(b)(1) may be facial (i.e., on the pleadings) or
19  factual, permitting the court to look beyond the complaint. Savage v. Glendale Union High
20  School, Dist. No. 205, 343 F.3d 1036, 1039-40, n.2 (9th Cir. 2003); see also White v. Lee, 227
21  F.3d 1214, 1242 (9th Cir. 2000). In a factual challenge, "the district court is not restricted to the
22  face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve
23  factual disputes concerning the existence of jurisdiction." McCarthy v. Unites States, 850 F.2d
24  558, 560 (9th Cir. 1988). See also Biotics Research Corp. v. Heckler, 710 F.2d 1375, 1379 (9th
25  Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion
26  into one for summary judgment).

27  ////
28  ////

III. <u>Facts</u>

Unless otherwise noted, the following facts are undisputed:

On November 26, 2012, Lieutenant Kenneth Bolinski conducted a training exercise for the Disturbance Control Team (DCT) at FCI-Herlong. (<u>See</u> Bolinski Decl., ECF No. 12-2.) As DCT leader, Lt. Bolinksi conducted trainings to certify that all DCT members met minimal standards necessary to respond to institutional disturbances. (<u>Id.</u>, ¶3.)

Each federal prison establishes at least one DCT, whose mission is to restore order at the facility in case of a disturbance, including riots and hostage situations. (<u>Id.</u>, ¶ 2.) Team members train on how to respond to crisis situations, and the team often serves as the primary institutional response to emergencies. (<u>Id.</u>) DCTs help safeguard institutions' security protocols and play an important role in keeping inmates, staff, and the general public safe. (<u>Id.</u>)

Lt. Bolinksi declares as follows:

The November 26, 2012 training took place at FCI-Herlong's firing range, roughly 2,500 feet from the inmates' recreation yard. (<u>Id.</u>, ¶4.) As part of the training, Lt. Bolinski instructed the team on the proper use of a Pepper Ball Launcher and continuous discharge (CS) grenades. (<u>Id.</u>, ¶ 5.) CS (the compound 2-chlorobenzalmalononitrile) is the defining component of tear gas, which is used as a riot control agent. Lt. Bolinksi had been trained on such uses and was certified to instruct others. (<u>Id.</u>)

During the training exercise, the wind shifted toward the prison. (<u>Id.</u>, ¶ 6.) Lt. Bolinski decided to continue the training exercise, because the wind shifted back away from the institution. (<u>Id.</u>) No policy forbids DCT training outside or in certain weather conditions, nor addresses where DCT training must be located. (<u>Id.</u>, ¶ 7.) Such decisions are left to prison management to implement in a way that balances the need to train with multiple factors, including prisoner well-being, staff safety, cost, and allocation of resources. (<u>Id.</u>, ¶¶ 7-8.)

In a verified complaint, plaintiff alleges that, at about 9:00 a.m. that morning, he was exercising on the recreation yard at FCI-Herlong with other inmates when he smelled a putrid, gas-like smell that burned his eyes, nose, and lungs, and made him lightheaded and disoriented. (ECF No. 1 at 2.) He attempted to mask the fumes by covering his face with his shirt, and saw

the other inmates in the yard doing the same. (Id.) Plaintiff and others gathered their belongings as best they could and moved "through the haze" to the inside recreation area, coughing and choking. (Id.) At approximately 9:30, the inmates were moved to another area. They received no immediate answers as to why they had been exposed to tear gas.

Later that day, plaintiff was told that a correctional officer had conducted a training operation with chemical agents "and forgot to check his 'wind flaps.'" (Id. at 4.) Plaintiff asserts that this training operation was conducted in the prison's parking lot, adjacent to the recreation yard and separated only by a chain link fence. (Id.)

IV.  Analysis

Defendant argues that the discretionary function exception to the FTCA applies because the officer conducting the outdoor training exercise on November 26, 2012 was performing a "discretionary function" that implicated policy concerns. Thus, defendant contends, the court lacks subject matter jurisdiction over plaintiff's negligence claim.

Determining whether the DFE applies requires a two-step analysis. The first step requires the determination of whether the challenged action involves an element of choice or judgment. In re Glacier Bay, 71 F.3d 1447, 1450 (9th Cir. 1995). When a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' the exception will not apply. Id. To demonstrate that its conduct was discretionary, the government need only show that there was room for choice in making the challenged decision. Santana–Rosa v. United States, 335 F.3d 39, 43 (1st Cir. 2003).

The second step requires determining whether the decision at issue involves considerations of social, economic or political policy; if it does, the exception applies. Glacier Bay, 71 F.3d at 1450. "When a statute, regulation or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Conrad v. United States, 447 F.3d 760, 766 (9th Cir. 2006); Alfrey, 276 F.3d at 562 (quoting Weissich v. United States, 4 F.3d 810, 814 (9th Cir. 1993)) (holding that federal prison officials' allegedly negligent response to prisoner's reports of cellmate's death threats fell within DFE).

Under 18 U.S.C. § 4042, the Bureau of Prisons has a general duty of care to safeguard prisoners. Section 4042 provides, in relevant part, that the BOP has charge of the management and regulation of all federal correctional institutions, including providing for the inmates' safekeeping, care, protection, instruction, and discipline. 18 U.S.C. § 4042(a)(1)-(3). However, under § 4042, the BOP retains sufficient discretion in the means it uses to fulfill that duty to trigger the DFE. See McCoy v. United States, 2014 WL 261833, *4 (N.D. Cal. Jan. 22, 2014), citing Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998); Montez v. United States, 359 F.3d 392, 396 (6th Cir. 2004); see also Calderon v. U.S., 123 F.3d 947, 950 (7th Cir. 1997) (§4042 "sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.").

When a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow," the DFE will not apply. In re Glacier Bay, 71 F.3d at 1450. Plaintiff argues that, in addition to breaching the general duty of care in § 4042, prison officials violated federal regulations governing the use of non-lethal force against inmates. These regulations provide:

> (a) The Warden may authorize the use of less-than-lethal weapons, including those containing chemical agents, only when the situation is such that the inmate:
>
>  (1) Is armed and/or barricaded; or
>
>  (2) Cannot be approached without danger to self or others; and
>
>  (3) It is determined that a delay in bringing the situation under control would constitute a serious hazard to the inmate or others, or would result in a major disturbance or serious property damage.

28 C.F.R. § 552.25(a)(1)(3). However, plaintiff's claim is not that prison officials intentionally used non-lethal force against him, but that they negligently exposed him to chemical agents in a training exercise. Thus these regulations do not apply to defeat the DFE.

Disturbance Control Team leader Lt. Bolinski states in his sworn declaration that "[n]othing in any policy I am aware of forbids training outside . . . in certain weather conditions . . . [or] addresses where training must be located . . . the amounts of munitions that must be utilized . . . or that [teams] train a certain manner with those munitions. Those decisions are left

6

up to the facility's management, to implement in a way that balances the need to train with other institutional requirements[.]" (Bolinski Decl., ¶ 7.) Bolinski declares that he considered those factors on the date in question. (Id., ¶ 8.)

Based on the foregoing, defendant has carried its burden to show that the first prong of the discretionary function test is met: Decisions concerning the specifics of the training exercise on November 26, 2012, including its location and timing, involved "an element of choice and judgment" on the part of prison officials.

In the second prong, defendant must show that the discretionary decision is based on social, economic, or political policy considerations. Glacier Bay, 71 F.3d at 1450. Here, the prison official who conducted the training on November 26, 2012 states that decisions about when, where, and in what weather, to train prison staff on the use of chemical agents, are made in consideration of policy factors. These include prisoner well-being, staff safety, cost, and allocation of resources. (Bolinski Decl., ¶¶ 7-8.)

As defendant has shown that the discretionary decision to conduct DCT training on November 26, 2012, under the conditions in place on that day, was "grounded in policy," Conrad, 447 F.3d at 766, defendant has carried its burden to show the DFE applies.

Based on the foregoing analysis, the court lacks subject matter jurisdiction over plaintiff's FTCA claim. Thus the undersigned will recommend dismissal of this action.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to file a sur-reply (ECF No. 22) is granted; and

2. The Clerk of Court is directed to assign a district judge to this action.

IT IS HEREBY RECOMMENDED that defendant's motion to dismiss for lack of subject matter jurisdiction (ECF No. 12) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 24, 2015

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2 / bari1102.mtd